# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| **CHENMOU WU,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | **C.A. No. N24C-04-229-PRW** |
| | ) | |
| **HONGWEI WANG, QINGJIE MI,** | ) | |
| **and SHUAI WANG,** | ) | |
| Defendants. | ) | |

Submitted:  February 10, 2026
Decided:  February 26, 2026

*Upon Plaintiff Chenmou Wu's Motion for Summary Judgment,*
**DENIED**.

*Upon Defendants Hongwei Wang, Qingjie Mi, and Shuai Wang's*
*Cross-Motion for Summary Judgment,*
**GRANTED**.

## ORDER

**HAVING FULLY CONSIDERED** the Parties' Cross-Motions for Summary Judgment (D.I. 15, 16); Defendants' Answering Brief (D.I. 18); Plaintiff's Response thereto (D.I. 19); the authorities cited, and the entire record developed thus far, it appears to the Court that:

(1)     Plaintiff Chenmou Wu and Defendant Shuai Wang began dating in early 2022, and Ms. Wang moved into Mr. Wu's residence in Bear, Delaware.[1]  The couple had a child together.[2]

---

[1]     Amend. Compl., 5 (D.I. 6); Answer and Countercl., 1 (D.I. 9); Defs.' Op. Br. MSJ, 2 (D.I. 16).

[2]     Am. Compl., 5; Answer and Countercl., 1; Defs.' Op. Br. Supp. MSJ, at 2. Although Mr. Wu

(2)     The relationship soured.  Sometime in March 2024, Mr. Wu moved out of the residence.[3]

(3)     At or around the same time of Mr. Wu's departure, Ms. Wang's mother, Qingjie Mi, and father, Hongwei Wang, moved in.[4]

(4)     Litigation ensued between the parties in both the Justice of the Peace and Family Courts.[5]

(5)     Mr. Wu filed a *pro se* complaint in this Court against the Wang family (collectively, the Defendants),[6] which he has subsequently amended.[7]  In Mr. Wu's operative complaint, he seeks damages based on Defendants' occupancy of his residence and related events, asserting claims for breach of contract, transportation expenses, lost wages, "mental damages", and other asserted wrongdoing that mostly amount to character criticisms of Defendants.[8]     Mr. Wu allegations are grounded

---

denies paternity, that assertion is immaterial to the resolution of the issues presently before the Court. Am. Compl., 5.

[3]   Defendants allege Mr. Wu was removed from the residence following a no-contact order from Delaware's Justice of the Peace Court. Defs.' Op Br. MSJ, 2–4. Mr. Wu agrees that he was removed but states that Ms. Wang "allegedly set a trap for the plaintiff by calling 911 under false pretenses, which resulted in . . . forced removal [of] the plaintiff from the home." Amend. Compl., 3–4. The truth of Mr. Wu's allegation of trap-setting is immaterial to the disposition of his claims.

[4]   Compl. 4–5; Answer and Countercl. Ex. A.

[5]   Answer and Countercl. Ex. A–C.

[6]   D.I. 1.

[7]   Amend. Compl.

[8]   *See generally* Amend. Compl.

- 2 -

in several factual contentions, including:

- That Defendants occupied his residence without paying rent;

- That false reports were made which resulted in his removal from the residence; and

- That Defendant Mr. Hongwei Wang engaged in threatening conduct, including alleged acts described by Plaintiff as "Chinese folk witchcraft" and other purportedly veiled threats.[9]

(6)     Defendants responded first with a *pro se* answer and counterclaim against Mr. Wu, including allegations of defamation and unpaid child support.[10] Defendants then retained counsel.[11]  Since retaining counsel, Defendants have not advanced, briefed, or otherwise referenced their counter claims before the Court.

(7)     Both parties have moved for summary judgment.[12]  The briefing submitted addresses only the claims asserted by Mr. Wu and does not meaningfully address Defendants' counterclaims.[13]  The Court's review of Defendants' claims, therefore, looks to whether this Court retains subject-matter jurisdiction or whether Defendants' counterclaims have been abandoned.

(8)     The Court finds that Mr. Wu brings no cognizable legal claims against Defendants; therefore, Defendants' Motion for Summary Judgment is **GRANTED**.

---

[9]     *See generally* Amend. Compl.

[10]    Answer and Countercl., 4.

[11]    D.I. 12.

[12]    *See generally* Pl.' Op. Br. MSJ; Defs.' Op. Br. MSJ.

[13]    *See generally* Pl.' Op. Br. MSJ; Defs.' Op. Br. MSJ.

Correspondingly, Mr. Wu's Motion for Summary Judgment seeking judgment as a matter of law on his claims as plaintiff is **DENIED**. Further, Defendants' *pro se* counterclaims are **DISMISSED** for lack of subject matter jurisdiction and abandonment.

(9) Under this Court's Rule 56, "[s]ummary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits' show 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"[14] The Court determines whether any genuine dispute of material fact exists while viewing the record in the light most favorable to the non-moving party.[15] And if no such dispute exists and the movant is entitled to judgment as a matter of law, summary judgment will be granted.[16] But at the same time, the Court need not resolve every factual allegation to reach that determination. Summary judgment is also appropriate where "there is no basis in law on which the opposing party may successfully rely in opposing such a motion for summary judgment."[17] Thus, where a claim isn't legally cognizable,

---

[14] *Options Clearing Corp. v. U.S. Specialty Ins. Co.*, 2021 WL 5577251, at \*7 (Del. Super. Ct. Nov. 30, 2021) (quoting Del. Super. Ct. Civ. R. 56(c)).

[15] *AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 444 (Del. 2005).

[16] *Brooke v. Elihu-Evans*, 1996 WL 659491, at \*2 (Del. Aug. 23, 1996) (citing *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, 312 A.2d 322, 325 (Del. Super. Ct. 1973)); *see also Jeffries v. Kent Cty. Vocational Tech. Sch. Dist. Bd. of Educ.*, 743 A.2d 675, 677 (Del. Super. Ct. 1999) (citing *Mitchell v. Wolcott*, 83 A.2d 759, 761 (Del. 1951)) ("However, a matter should be disposed of by summary judgment whenever an issue of law is involved and a trial is unnecessary.").

[17] *Emmert v. Prade*, 711 A.2d 1217, 1220 (Del. Ch. 1997); *Brzoska v. Olson*, 668 A.2d 1355,

judgment as a matter of law may be entered irrespective of any "immaterial factual disputes."[18]

(10) First, Mr. Wu cannot succeed on his breach-of-contract claim. To recover rent or "housing" costs, Plaintiff must establish the existence of a landlord-tenant relationship or other enforceable agreement obligating Defendants to pay rent.[19] The record contains no evidence of a written lease, a verbal rental agreement, or conduct giving rise to an implied contract.[20]

(11) The undisputed evidence affirmatively negates the existence of any contractual relationship. Mr. Wu invited Ms. Wang to reside with him; there is no evidence that her occupancy was conditioned on payment of rent or other consideration.[21] After Mr. Wu departed from the residence, Ms. Wang's parents moved into the home at her invitation—not pursuant to any lease or rental arrangement with Mr. Wu.[22] Moreover, prior proceedings in the Justice of the Peace

---

1365 (Del. 1995).

[18] *Brzoska v. Olson*, 668 A.2d 1355, 1365 (Del. 1995).

[19] *Malcom v. Dorseman*, 148 A.2d 353, 355 (Del. 1959); *Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 548 (Del. Super. Ct.), *aff'd*, 886 A.2d 1278 (Del. 2005) ("Under Delaware law, the elements of a breach of contract claim are: (1) a contractual obligation; (2) a breach of that obligation; and (3) resulting damages.").

[20] *See generally* Amend. Compl.; *see also Malcom v. Dorseman*, 148 A.2d 353, 355 (Del. 1959); *Cap. Mgmt. Co. v. Brown*, 813 A.2d 1094, 1098 (Del. 2002) (citing *Chase Manhattan Bank v. Iridium Afr. Corp.*, 239 F. Supp. 2d 402, 408 (D. Del. 2002)) (declaring that intent and mutual assent is required for an implied contract). Mr. Wu has never alleged a meeting of the minds between Defendants and himself. *See generally* Amend. Compl.

[21] Amend. Compl., 5.

[22] Compl. 4–5; Answer and Countercl., Ex. A.

Court expressly determined that no landlord-tenant relationship existed between Mr. Wu and Ms. Qingjie Mi.[23] Absent proof of an agreement, Mr. Wu's contract theory fails as a matter of law. No agreement is provided, evidenced, or even alleged.[24] To the extent Mr. Wu now attempts to assert the existence of such a contract, the Court's doctrines of preclusion would bar relitigating the matter.[25] Accordingly, his contract theory fails as a matter of law.

(12) Second (and similarly to the first), Mr. Wu's freestanding claim for transportation costs and lost wages likewise fails. He has identified no contractual, statutory, or other legal duty requiring Defendants to reimburse such expenses.[26] Nor has he demonstrated a legally cognizable basis tying those claimed losses to an

---

[23] Answer and Countercl., Ex. A.

[24] *See generally* Amend. Compl.

[25] *Columbia Cas. Co. v. Playtex FP, Inc.*, 584 A.2d 1214, 1216 (Del. 1991) ("Collateral estoppel bars a party from relitigating a factual issue previously litigated, while res judicata bars a suit involving the same parties based on the same cause of action."). *California State Teachers' Ret. Sys. v. Alvarez*, 179 A.3d 824, 842 (Del. 2018) (quoting *Riverdale Dev. Co. v. Ruffin Bldg. Systems, Inc.*, 146 S.W.3d 852, 855 (Ark. 2004)) ("'Collateral estoppel, or issue preclusion, bars relitigation of issues, law, or fact actually litigated in the first suit.'"); Answer and Countercl., Ex. A ("The Court found . . . [Ms. Qingjie Mi] moved into [Mr. Wu's] home for the sole purpose of tending to her grandchildren after the domestic incident occurred. As such, the Court determines [she] was not a tenant when she moved into [Mr. Wu's] home. Furthermore, the Court determines that a landlord tenant relationship does not exist between the parties as [Mr. Wu] fails to establish that a rental agreement (verbal or written) existed between the parties . . .").

[26] Mr. Wu seeks a "transportation fee of $40 per week day" for the fifty-six days he was not residing in his home. Am. Compl., 2. As with his breach-of-contract theory, this claim is not grounded in any agreement or other cognizable legal obligation requiring Defendants to pay such expenses. He also seeks $1,260 for days he attended proceedings in various Delaware courts. *Id.* The Court cannot find any statutory or other legal basis permitting recovery of such litigation-related transportation costs in this separate action.

actionable wrong by Defendants.  Without a viable underlying claim, these damages cannot stand independently.

(13)  Third, Mr. Wu's claim for "mental damages" is not independently cognizable under Delaware law.[27]  Typically, mental anguish constitutes a category of damages, not a standalone cause of action.[28]  Given the liberal standard it applies when construing *pro se* pleadings,[29] the Court has carefully considered whether Mr. Wu's allegations may be viable under any recognized theory of liability that would permit recovery for emotional distress.  They cannot.  The closest potentially applicable theory is intentional infliction of emotional distress ("IIED").  The Court therefore analyzes the claim under the IIED framework, as its failure under that standard necessarily demonstrates the insufficiency of any other potential emotional-distress claim.

(14)  To prevail for a claim of IIED under Delaware law, a plaintiff must establish that another, through extreme and outrageous conduct, intentionally or

---

[27]  Amend. Compl., 3.

[28]  *Cf. Mergenthaler v. Asbestos Corp. of Am.*, 480 A.2d 647, 651 (Del. 1984).

[29]  *See Browne v. Saunders*, 2001 WL 138497, at *1 (Del. Feb. 14, 2001) ("As a general rule, we interpret pleading requirements liberally where the plaintiff appears pro se."); *see also Vick v. Haller*, 1987 WL 36716, at *1 (Del. Mar. 2, 1987) ("A *pro se* complaint, however inartfully pleaded, may be held to a somewhat less stringent technical standard than formal pleadings drafted by lawyers. . . ."); *Buck v. Cassidy Painting, Inc.*, 2011 WL 1226403, at *2 (Del. Super. Ct. Mar. 28, 2011) ("When appropriate, this Court will provide *pro se* litigants some degree of latitude in preparing and presenting their cases.").

recklessly caused him severe emotional distress.[30]  The emotional distress alleged must be substantially severe—in fact, of such substantial quality or enduring nature that no reasonable person could be expected to endure it.[31]  And liability "does not extend to mere insults, indignities, threats, annoyances, petty oppressions or other trivialities.  The law cannot intervene in every case where someone's feelings are hurt."[32]

(15)    Under Delaware law, Mr. Wu's IIED claim fails.  The conduct he alleges—Defendants' continued occupancy of the residence;[33] their participation in a protective-order action and related court proceedings;[34] his vaguely described claims that Defendants accused him of abusing them and his children;[35] contacting

---

[30]    *Cooper v. Bd. of Educ. of Red Clay Consol. Sch. Dist.*, 2009 WL 2581239, at *3 (Del. Super. Ct. Aug. 20, 2009) ("Delaware applies Restatement (Second) of Torts § 46 in defining the elements of intentional infliction of emotional distress").

[31]    *Doe v. Wildey*, 2012 WL 1408879, at *5 (Del. Super. Ct. Mar. 29, 2012); *Ham v. Brandywine Chrysler-Plymouth, Inc*., 1985 WL 189010, at *3 (Del. Super. Ct. June 26, 1985); Restatement (Second) of Torts § 46 cmt. j (A.L.I. 1981).

[32]    *Adams v. Aidoo*, 2012 WL 1408878, at *10 (Del. Super. Ct. Mar. 29, 2012), *aff'd*, 58 A.3d 410 (Del. 2013), as revised (Jan. 3, 2013) (quoting the trial court's jury instructions); *see also* Restatement (Second) of Torts § 46 (A.L.I. 1981). Delaware sets a high bar for IIED claims. *Compare Collins v. Afr. Methodist Episcopal Zion Church*, 2006 WL 1579718 (Del. Super. Ct. Mar. 31, 2006) (denying summary judgment on an IIED claim where a pastor allegedly made repeated sexually harassing and intimidating phone calls to a parishioner for nearly a year); *with Farmer v. Wilson*, 1992 WL 331450 (Del. Super. Ct. Sept. 29, 1992) (granting summary judgment on IIED claim where school officials took a student to a doctor for a sports physical without parental consent; the Court held that, although improper, the conduct was not extreme or outrageous and plaintiff's stress and headaches did not amount to severe emotional distress).

[33]    *See generally* Amend. Compl.

[34]    *See generally id.*

[35]    Amend. Compl., 2–3, 8. The abuse allegations are pled in wholly conclusory terms. *Wilson v. Metzger*, 2021 WL 2355230, at *1 (Del. Super. Ct. June 9, 2021) ("Such allegations, with no

police about a missing laptop, which resulted in Mr. Wu being questioned;[36] stating that Ms. Wang never intended to have a long-term marriage with him;[37] and his characterization of certain acts as threatening or involving "Chinese folk witchcraft"[38]—does not rise to the level of extreme and outrageous conduct required to sustain an IIED claim. At most, the record reflects a deteriorated domestic relationship and contentious litigation. Such circumstances do not qualify as intolerable conduct.

(16) Moreover, Mr. Wu has produced no evidence demonstrating severe emotional distress of the type required under Delaware law.[39] No doubt these alleged acts were troubling to Mr. Wu—he is here in Court airing them in prolix filings—and some may seem beyond mere annoyances, but they are not grounding for turning this private domestic dispute into an actionable tort. This Court is not a

---

factual support, do not satisfy [Plaintiff's] initial burden on summary judgment. His conclusory allegations merely mirror those in the complaint. As such, they, alone, do not demonstrate the absence of genuine issues of material fact."). Mr. Wu vaguely suggests that Defendants lied about various abuse allegations to police and in other Delaware courts, but he identifies no specific statements, when exactly they were made, to whom exactly they were made, or what consequences followed. Nor does he point to any evidence supporting those assertions. Mr. Wu likewise fails to allege any concrete harm stemming from the purported accusations.

[36] Amend. Compl., 2.

[37] *Id.*, 5–8.

[38] The alleged "witchcraft" consists of burning papers, chanting, and placing wood-shaped weapons and chopped wood near and within the house. Amend. Compl., 10–11. According to Mr. Wu, his name means "Wood" in Chinese, and therefore, chopped wood is a veiled threat against his life. *Id.*

[39] *See generally* Amend. Compl.

forum for converting the unpleasant, sometimes eccentric byproducts of a strained domestic relationship into claims for money damages. The record contains no objective proof of distress so substantial or enduring that no reasonable person could be expected to endure it.[40] Accordingly, Defendants are entitled to judgment as a matter of law on Mr. Wu's claim for "mental damages."

(17) Finally, Mr. Wu advances various additional grievances and allegations not tied to any particular legal claim nor remedy that is available in the Superior Court.[41] To the extent not expressly addressed, they are either not properly before this Court or are not tied to any cognizable cause of action.

(18) Next, for the sake of completeness, the Court should turn to Defendants' counterclaims that were penned when they were self-represented. Defendants bring counterclaims that attempt to address child support payments.[42] By statute, the Family Court has exclusive jurisdiction over matters relating to child support, including the establishment, modification, and enforcement of support obligations.[43] Thus, this Court simply cannot hear those claims. Given that this Court has no jurisdiction thereover, those child support counterclaims are dismissed.

---

[40] Restatement (Second) of Torts § 46 cmt. j (A.L.I. 1981); *see Doe*, 2012 WL 1408879, at *5; *Ham*, 1985 WL 189010, at *3.

[41] *See generally* Amend. Compl.

[42] Answer and Countercl., 4.

[43] DEL. CODE ANN. tit. 10, § 921 (2026).

(19) The Court concludes by reviewing all of Defendants' other counterclaims and grievances—including that for defamation.[44] This Court has the authority to dismiss claims for failure by the claimant to meaningfully preserve them.[45] A party's failure to develop, brief, or otherwise pursue asserted claims throughout the course of litigation warrants treating those claims as abandoned.[46] Because Defendants have taken no action to substantively advance their defamation allegations or any other grievances following their inclusion in their Answer, and counsel has not pursued them in motion practice or briefing, the Court deems those counterclaims abandoned and dismisses them accordingly.

(20) For these reasons, Defendants have demonstrated that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law on all Mr. Wu's claims. Mr. Wu's Motion for Summary Judgment seeking judgment in his favor as a matter of law is **DENIED**, and Defendants' Cross-Motion

---

[44] *See generally* Answer and Countercl.

[45] *See* Del. Super. Ct. R. Civ. P. 41(e), (f); *Harrison v. Delaware Supermarkets, Inc. ex rel. Shoprite of Christiana Crossing*, 2014 WL 2718830, at *3 (Del. June 12, 2014) (citing *Gebhart v. Ernest DiSabatino & Sons, Inc.,* 264 A.2d 157, 159 (Del. 1970)) (explaining that the authority "stems from that court's inherent power to 'manage its own affairs and to achieve the orderly and expeditious disposition of its business.'").

[46] *Park Ctr. Condo. Council v. Epps*, 723 A.2d 1195, 1198 (Del. Super. Ct. 1998) ("Avoiding dismissal . . . requires more significant action than taking steps to delay or prevent trial. A litigant must actively pursue a case from its inception through its resolution.") (internal citations omitted) *Wilmington Trust Co. v. Barry,* 397 A.2d 135, 138 (Del. Super. Ct. 1979) (quoting *Rovner v. Warner Bros. Pictures*, 29 F.R.D. 488, 490 (E.D. Pa. 1962)) ("The purpose of rules such as Rule 41(e) is to dispose of pending cases where possible, not merely to permit litigants to maintain a 'faint spark of life in their litigation.'").

for Summary Judgment is **GRANTED**. Defendants' counterclaims are likewise

**DISMISSED** as either abandoned or for lack of subject matter jurisdiction.

**SO ORDERED,**

*/s/ Paul R. Wallace*

_____

Paul R. Wallace, Judge

Original to Prothonotary

Cc: All parties and counsel